William A. McDevitt et al., Partners as W. E. McDevitt & Company, and George C. Wilcher, Plff. in Err., *v.* Moses Vial and Sarah His Wife, to the Use of Said Wife.

A married woman who has purchased personal property with funds raised by a public subscription and presented to her can hold such property, free from the claims of her husband's creditors.

Where an execution was issued against a husband on a judgment against

husband and wife for necessaries, and both husband and wife claimed the exemption, and the property was found to be worth less than $300, the court, on a second execution and levy against the wife, followed by a sale of some of the property first levied upon, is not bound to instruct the jury that they must find the property first levied on was the property of the husband; but the wife may be permitted to show that a portion of it was her own.

(Argued November 2, 1887.   Decided November 11, 1887.)

October Term, 1887, No. 132, W. D., before Gordon, Ch. J., Paxson, Sterrett, Green, and Williams, JJ.   Error to the Common Pleas No. 2 of Allegheny County to review a judgment in favor of the plaintiffs in an action on the case to recover damages for unlawfully selling property on an execution.   Affirmed.

November 15, 1886, W. A. McDevitt & Company, doing business in Braddock, Pennsylvania, obtained judgment before a justice of the peace against Moses Vial and Sarah Vial of the same place for $72 for groceries and other goods bought at their store on an account opened in the name of Sarah Vial.   On December 10, 1886, an execution was issued against Moses Vial individually and placed in the hands of George C. Wilcher, a constable.   Mr. and Mrs. Vial claimed the benefit of the exemption laws, and appraisers were appointed who reported that there was not sufficient goods levied on to amount to $300.   An alias execution was subsequently issued against both defendants; an indemnity bond was given to the constable and goods were sold of a sufficient amount to satisfy the debt.

At the time of the first levy Mrs. Vial claimed that a part of the goods were her own and a part belonged to a son and daughter.   At the trial the plaintiffs proved that in 1885 they lived in Irwin, Pennsylvania; that in that year a fire occurred and all their goods were burned.   Mrs. Vial testified that in consequence of the fire a subscription was taken up and the money raised amounting to $147 had been given to her; that her father gave her $50 and that neighbors gave her bedsteads, dishes, etc., and that she had bought the goods levied upon and sold, with the money that was thus given to her.

The plaintiffs offered in evidence, under objection, a subscription list headed as follows:   "We, the undersigned, agree to pay the amount opposite our respective names for the benefit

of Mrs. S. Vial and family, a sufferer from the late fire." Objection overruled and evidence admitted.

The defendants submitted, *inter alia,* the following points:

2. "That the property donated to Sarah Vial by various persons for the use of herself and her family, and the property which she bought with the money which was donated to the use of herself and family by such persons, is not such property as is by law exempt from levy and sale of the debts of the husband."

Refused.

7. "If the jury believe from all of the evidence in the case that Sarah Vial, the plaintiff, had, at or about the time of the levy and sale of the property which she claims was hers, other property liable to execution, which she fraudulently removed, concealed, or withheld from the officer with a design or intent to prevent, hinder, or delay the collection of the judgment of W. A. McDevitt & Company, it is an absolute bar to this action, and the verdict should be for the defendants."

Refused. Because there is no evidence to sustain it.

8. "That from all of the evidence in the case, it is the duty of the jury to find that the property set aside by the appraisers, by and in pursuance of the notice of claim of exemption given to the officer at the time that he made the levy on the execution which was issued against Moses Vial, was the property of Moses Vial, and their verdict should be for the defendants."

Refused.

The court charged, *inter alia,* as follows:

"It seems in this case that, first, execution was levied against all the furniture in the house. The wife, the present plaintiff, claimed one portion of it, and the son and daughter claimed the other portion, they contending that Moses Vial, the husband of the present plaintiff, had not anything at all. That was the claim set up before the constable; he had no right to levy on the property of the daughter or son on that execution, if he knew it to be the daughter's or son's; yet being in the house where Moses Vial lived and where he was carrying on a saloon, or a tavern, licensed in his own name, the constable, and the plaintiff in the execution, had a right to presume that all the property in the house belonged to Moses Vial. I say he had a right to presume that, because prima facie in law it was his property. Still, if the wife owned any property, not derived through her husband,

she would have a right to claim it and to establish her claim; so would the son or daughter.

"The constable having appraised all the property in the house, and the whole of the property amounting to less than $300, he stopped. If the property had amounted to more than $300, of course, it would have been his duty to have ascertained more closely what property the wife claimed. But as the claim did not amount to $300, it seems that he stopped. He had no right to levy on the property of the son or daughter on that execution; he could only levy on the property of Moses Vial or his wife, and as they claimed the whole of the property, of course he stopped. He ought really to have set apart what was claimed by the wife; that would have been the better way, and he then could have tested the right of the son and daughter, after levying upon that property as the property of their father, if he believed it was his property and not theirs. The husband and wife both gave notice claiming the benefit of the $300. I doubt not that under it, if there had been some property belonging to the husband and some belonging to the wife, the constable might have set aside a part to the husband and a part to the wife, providing the whole amount did not exceed $300. The constable testified that he set apart this, not as the property of Moses Vial, but claimed by the wife, the daughter and son; he did not know which property was the wife's and which the son's and daughter's. After that a second execution went out, which was for the purpose of getting at the wife's property. On the first execution he could not sell the wife's property, because he had to make it out of the husband's property if he had any. On the second execution he could sell the wife's property. I believe she gave notice again; or rather, I believe, both of them gave notice to the defendants in this case that they claimed the property that had been set aside on the previous execution to be exempt and that if they proceeded to sell they would proceed at their peril. The defendants indemnified the constable to sell; and the constable did sell, and sold, it is alleged, some of the very things that had been set apart for the wife in the previous proceedings.

"Now, it is immaterial in this case whether these other articles claimed by the son and daughter belonged to them or not. It is not material whether they belonged to the husband. The husband may have had other property; he may have fraudulently removed a great deal of property from the house. It does not

affect the wife's claim in this case; if she had a valid claim, it cannot be destroyed by any fraud that the husband may have committed before.

"The first question, therefore, for you to pass upon is this: Was the property that is now claimed by the wife the property of the wife? She must prove to you, and to your entire satisfaction, that it was her separate property, acquired wholly independent of her husband, and not through him in any way. . .

"The counsel for the defendants has stated a point of this kind: That if that money was contributed to her for her use and the use of the family, it is not her property but might be levied on for the debt of the husband. I refuse that. If it was given to her and given to her for her use and the use of her family, it was her separate property and could not be levied upon for the debts of the husband.

"The next point would be the value of these articles if set apart for her; but under the testimony of the constable I suppose there can be no question about that, unless it might be that he ought to have designated at that time the particular articles of furniture that belonged to her. I do not think that is material. There was nothing claimed by the husband. She, her son, and daughter claimed all in the house. He appraised all in the house, and the whole amount did not come to $300, so that that covers whatever she had; he would have had a right to have required her to point out specifically what belonged to her and what she claimed. When he went back with the second execution he levied on, I presume, everything, nearly, in the house. The second execution was issued two days after the other was returned. The defendants claimed the right to protest the validity of her claim, and they indemnified the constable and directed him to proceed and sell the property. Of course they did that at their own peril; they ran the risk by that proceeding of a suit to establish their title. The whole amount of property sold amounted to about $118.

"Now I go to the question of damages. If you find all of these facts in favor of the plaintiff, then the next question would be the amount of damages to which she is entitled. It is true, according to a point presented by the plaintiff's counsel, that in an action of this kind where the jury believe from the evidence that the defendant has acted in an oppressive way and in a wanton disregard of a party's rights they are not limited to the

actual amount of the value of the property but may go beyond
that and give what is called exemplary damages—something in
the nature of a punishment for the gross outrage and wrong
committed. Before a jury go beyond compensatory damages
they ought to be satisfied that the wrong had been done with a
high handed spirit and a disposition to oppress and do wrong.
Where there is not evidence to sustain that motive or purpose,.
the jury should not allow anything more than mere compensa-
tory damages, that is, damages equal to all the injury done. Now
bearing on that we have this: Mrs. Vial testified to a great many
articles and she puts the value on them at about $190. She gave
what the articles cost originally, that is, the carpet, matting, mat-
tress, bedstead, pillows, wash bowls, fixtures, looking glasses,
chairs, etc., I think, at $190; these would not be worth as much
after being in use after a year or so, or six months, whatever
time it was, as they were worth at first—carpets, mattings, and
things of that kind, especially, that might be worn a little. Bear-
ing on that is the testimony of the appraisers themselves; it is
some evidence, not conclusive. The whole amount of things in
the house appraised amounted to less than $300—$280. Then
the price that these articles sold for at the sale is a matter to be
considered, although it is not conclusive against the plaintiff.
Articles may be sold at a great sacrifice at a public sale; but the
price that they bring at a public sale is some evidence of the
value, and some evidence that the jury should take into consid-
eration. Not only the articles that Mrs. Vial claims in this case
but a great many other articles were embraced in that sale, and
the whole amount came to $118. Of those articles Charles Vial,.
the son, bought to the amount of $28; one item is the safe, and
he bought the bedstead and two carpets, bowl and pitcher and
safe, amounting in all to $28.25. Mrs. Vial bought (or at least
the articles were knocked down in her name, and according to·
the constable the son paid for them) bed-room set $7, carpet.
$3.60, stand $3.10, bed and bedding $7.25, etc. The articles
that she bought at the sale amounted to $35.70; the aggregate
of the amount purchased by her and her son was $63.95, so that
all the other articles sold at that sale that were taken away
amounted to only $54. She purchased in some of the things.
that she claims and purchased some things that she does not
claim—that, I think, she said belonged to her daughter. The
son purchased the safe at $20; I think that really was not re-

quired to be paid; but it is the same thing; I have counted it because that is included in the $118, proceeds of the sale, and I say only about $54 was realized from the sale of other articles than what the son or plaintiff in this case got; of course the safe was not taken away. Now you are not limited to these figures. The plaintiff did not lose these articles that she bought in at the sale; she had to pay that much to save them; and if it was a wrongful sale, she is entitled to recover back that amount; and, as I said, you are not limited to that because you may go beyond it; it is an element that may be considered by the jury in estimating her loss. What did she lose in consequence of the wrongful act of the constable and the plaintiff in the execution?

"There is some controversy as to some of these articles that she claims were not brought from Irwin by her. I think she claims nine beds and bedsteads, but she admitted when last on the stand that only five of these were brought from Irwin station. As I said to you, all that was bought after they came to Braddock, if bought with money realized in the hotel, or boarding house, would be the property of the husband, whether bought on credit or bought for cash. If she brought any money with her from Irwin station, that was given to her, and bought articles with that money, those articles would be her separate property."

Verdict and judgment for plaintiffs, for $56.

The assignments of error specified the admission of the plaintiffs' offer in evidence, as above, and the answers to the defendants' points.

*Edward F. Duffy,* for plaintiffs in error.—Mrs. Vial could not hold the money given to her for the benefit of herself and family "as her own separate property," to the exclusion of her husband's creditors. Winter v. Walter, 37 Pa. 155.

Whatever may be said of the property purchased by Mrs. Vial with the money given to her and that earned by washing, it being mixed and confused with other property purchased with the joint earnings and on the joint credit of herself and husband, so as not to be distinguishable, it was not such property as is exempt from execution for the liabilities of her husband. Hallowell v. Horter, 35 Pa. 375.

To bring the property of a married woman under the protection of the act of 1848 it is made necessary by the letter as well

as the spirit of the statute to prove that she owns it. Evidence that she purchased it amounts to nothing, unless it be accompanied by clear and full proofs that she paid for it with her own separate funds. Keeney v. Good, 21 Pa. 349; Walker v. Reamy, 36 Pa. 410; Gault v. Saffin, 44 Pa. 307; Baringer v. Stiver, 49 Pa. 129; Lochman v. Brobst, 102 Pa. 481; Leinbach v. Templin, 105 Pa. 522; Hallowell v. Horter, 35 Pa. 375.

The husband, as the head of the family, is presumed to be the owner of all the personal property owned by the family, until the contrary is proven. Topley v. Topley, 31 Pa. 328; Walker v. Reamy, 36 Pa. 410; Winter v. Walter, 37 Pa. 155; Curry v. Bott, 53 Pa. 400; Pier v. Siegel, 107 Pa. 502.

As the execution of December 10, 1886, was issued against Moses Vial the property was levied upon as his, and was subsequently appraised as such in pursuance of a notice claiming the benefit of the exemption law; and Mrs. Vial was not entitled to claim such property as her separate property, and have it appraised and set apart to her as such on the execution against her husband, individually.

The court should have affirmed the defendants' seventh point. There was evidence that a portion of the property levied upon had been fraudulently removed before the appraisement was made.

(No paper book was presented, *contra.*)

PER CURIAM:

This case was carefully submitted to the jury on the facts, and the points presented were well ruled; hence the assignments of error cannot be sustained.

The judgment is affirmed.